IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STACY LANE VANHORN, | ) | 4:03CV3336 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| NEBRASKA STATE RACING | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| DOUGLAS L. BRUNK, | ) | 4:03CV3378 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| NEBRASKA STATE RACING | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiffs in these consolidated cases, Dr. Stacy Lane VanHorn and Dr. Douglas L. Brunk, are licensed veterinarians in the State of Nebraska who claim that they were denied due process and equal protection when they were disciplined by the Nebraska State Racing Commission and not permitted to treat racehorses. The commission has been dismissed from the action on Eleventh Amendment immunity grounds,[1] but its executive secretary, Dennis Oelschlager, and its three members,

---

[1] Although the Commission has been found to be immune from suit, and is no longer considered a party to the action, the court has not entered a final judgment of dismissal pursuant to Federal Rule of Civil Procedure 54(b).

Dennis P. Lee, Janell Beveridge, and Bob Volk, are all sued individually for damages and in their official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983. The court has previously determined that these individuals are entitled to quasi-judicial immunity on certain claims related to the plaintiffs' disciplinary proceedings, and that they are entitled to qualified immunity on certain other claims that were alleged in the plaintiffs' original complaints. The court also dismissed certain claims that were not actionable for reasons other than immunity, but the plaintiffs were granted leave to amend in order to allege an essential element of their shared equal protection claim.

VanHorn alleges in three "causes of action" in his amended complaint that (1) he was denied due process when (a) he was disciplined by the commission in 2002 and (b) he was not issued a license by the commission to treat racehorses in 2002, (2) he was denied equal protection because a directive was issued by the commission that precluded the plaintiffs from treating racehorses even off-premises (i.e., away from the racetracks), and (3) he was denied due process when he was not issued a license by the commission in 2003 and 2004. Brunk alleges in two "causes of action" in his amended complaint that (1) he was denied due process when he was disciplined by the commission in 2002, and (2) he was denied equal protection because of the commission's directive forbidding off-premises treatment.

The defendants have filed a motion for summary judgment based on qualified immunity and also on the merits. In apparent compliance with the court's local rules, the defendants have "set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). The defendants' statement of material facts consists of 56 numbered paragraphs that each contain appropriate references to the record. See NECivR 56(a)(2).

2

The plaintiffs have failed to respond the defendant's statement of material facts in the manner required by NECivR 56.1(b)(1) ("The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies."). The plaintiffs instead have supplied their own statement of material facts in 50 numbered paragraphs that do not correspond to the defendants' statement, and have interspersed additional facts throughout their 47-page brief.

As a consequence, all properly referenced material facts in the defendants' statement will be deemed admitted. See NECivR 56.1(b)(1); Cordray v. 135-80 Travel Plaza, Inc., 356 F. Supp. 2d 1011, 1014-15 (D. Neb. 2005) (granting summary judgment based in part on plaintiff's failure to address each numbered paragraph of defendant's statement of material facts); Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996) (applying local rule for Western District of Missouri, plaintiff was deemed to have admitted all facts in defendant's statement that were not specifically controverted).[2]

---

[2] None of the documents that were filed by the defendants in support of their motion have been authenticated by affidavit as required by NECivR 7.1(a)(2)(C). See also Stuart v. General Motors Corp., 217 F.3d 621, 636 n. 20 (8th Cir.2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)."). The plaintiffs, however, have not raised any objections to the authenticity of the defendants' documents. Absent a motion to strike or other timely objection, the court may consider a document that fails to conform to the formal requirements of Rule 56(e). See Ruby, 76 F.3d at 912, n. 8. The same is true regarding the court's application of NECivR 7.1 ("[A] party who fails to observe the requirements of this rule may be deemed to have abandoned in whole or in part that party's position on the pending motion.") (emphasis supplied). Thus, the defendants' failure to authenticate documents will not prevent material facts in their statement from being treated as "properly referenced" for purposes of NECivR 56.1(b)(1).

"Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  See Fed.R.Civ.P. 56(c); Smith v. Ashland, Inc., 250 F.3d 1167, 1171 (8th Cir. 2001).  An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)."  Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005).

There is no genuine issue regarding the following material facts that have been stated by the defendants:

1.  Van Horn is a licensed veterinarian in the State of Nebraska. Prior to and during the year 2001, Van Horn was licensed by the Commission to examine or treat horses registered for racing.

2.  Brunk is a licensed veterinarian in the State of Nebraska. Brunk was licensed by the Commission prior to and in the year 2001 to examine or treat horses registered for racing.

3.  Commission is a State administrative agency created by Neb. Rev. Stat. § 2-1201. Lee, Beveridge, and Volk are duly appointed members of the Commission pursuant to Neb. Rev. Stat. § 2-1201, with Lee elected to be Chairman pursuant to Neb. Rev. Stat. § 2-1202.  Oelschlager is employed as the Executive Secretary for the Commission pursuant to Neb. Rev. Stat. § 2-1201.

4.  In March of 2001, Investigators for the Commission found positive tests for Clonidine on horses tested at Fonner Park.

5.  The testing resulted in 11 positive tests for Clonidine.

6.  As part of the investigation, the Commission sought cooperation from licensees.  In order to facilitate the release of information,

4

the Commission sent an Order to Provide Information to the trainers. The Order stated, in relevant part, "Pursuant to your cooperation as directed by [Rule 2.001.07A], you are hereby assured that any information provided pursuant to this order will not be used directly or indirectly to develop any charge of a rule violation against you <u>so long as the information provided is truthful</u>." (emphasis in original).

7. On or about January 7, 2002, the Commission filed separate but nearly identical complaints against Plaintiffs. The Complaints also included notice of hearing scheduled for January 31, 2002.

8. On January 10, 2002, Oelschlager sent letters to Plaintiffs stating that if they applied for an annual license for 2002, he would refer the application to the Commission for final action, pursuant to Rule 10.005.

9. The Commission was concerned about setting the hearings for Plaintiffs as soon as possible since the Fonner Park season was approaching and the uncertainty of veterinarian licenses would have an impact on the opening of the season.

10. On January 15, 2002 (Brunk) and January 18, 2002 (Van Horn), Plaintiffs filed Motions for Continuance due to a conflict with the January 31, 2002 hearing date. On the same date, Plaintiffs filed requests that the Commission be bound by the Rules of Evidence during the proceedings, and Objections to Jurisdiction and Motions to Dismiss. Plaintiffs also filed Motions to Compel production of, among other things, reports made during the investigation.

11. On January 31, 2002, the Commission entered a combined Order on the Plaintiffs' motions. The Commission granted the Motion for Continuance and the Request for Rules of Evidence. The Commission did not rule on the Objections to Jurisdiction and Motion to Dismiss, but determined that the matters would be taken up on the date of hearing. The Commission also granted

the Motion to Compel, with the exception of investigative reports prepared by the investigators.

12. On February 14, 2002, the Commission issued a subpoena to Plaintiffs, requiring them to turn over records to Oelschlager as the Executive Secretary.

13. The Commission rescheduled Plaintiffs' hearings for March 5, 2002.

14. On February 22, 2002, Mr. Von Seggern, attorney for Van Horn, requested an extension from the March 5, 2002, hearing date.

15. On February 21, 2002 (Brunk) and February 22, 2002 (Van Horn), Plaintiffs filed identical Motions for an Order to Disclose Expert Testimony.

16. On February 22, 2002, Van Horn also filed a Motion to Make Definite and Certain or to Strike, and a motion requesting that the Commissioners set a pretrial conference.

17. Also on February 22, 2002, Van Horn filed another Motion to Compel/Produce documents related to his investigation, including investigative reports prepared by the investigators. Van Horn also filed a Petition for Declaratory Order.

18. On February 22, 2002 (Brunk) and March 7, 2002 (Van Horn), Plaintiffs filed Motions to Quash their Subpoenas.

19. On March 13, 2002, counsel for the Commission filed an Objection to Plaintiffs' motions to quash. On the same date, counsel for the Commission also filed Objections to Plaintiffs' Motions for Pretrial Conference. Counsel for the Commission also entered an Objection to Plaintiffs' Petitions for Declaratory Judgment. Additionally, counsel for the Commission filed an Objection to Van Horn's Motion to Make More Definite and Certain or to Strike.

20. The Commission produced or allowed inspection of supporting documentation used in the investigation with the exception of protected investigative reports.

21. On March 13, 2002, the Commission responded to Plaintiffs' requests for Disclosure of Expert Witnesses by disclosing that counsel for the Commission may call Petra Hartman, Dr. Thomas Tobin, Pamela Zilly, Rodney Link, and Dr. Richard Sams as expert witnesses.

22. On March 27, 2002, Schroeder, attorney for Brunk, filed a Motion to Continue the hearing scheduled for April 5, 2002.

23. On or about May 10, 2002, the Commission overruled Plaintiffs' pending motions.

24. After settlement discussions broke down, the Commission attempted to reschedule Brunk's hearing for August, 2002.

25. On July 23, 2002, Brunk filed a Motion to Continue and Objection to Venue.

26. On August 22, 2002, the Commission granted Brunk's Motion to Continue the August 12 hearing date.

27. The hearing set for Van Horn was consolidated with the hearing for Brunk and rescheduled for September 23, 2002.

28. On August 22, 2002, Brunk filed a <u>Daubert</u> Motion In Limine requesting that the Commission conduct a <u>Daubert</u> evidentiary hearing.

29. On August 29, 2002, Plaintiffs filed Motions to Compel information relating to the opinions of expert witnesses to be called by the Commission.

30. On August 30, 2002, Van Horn filed a Second Set of Interrogatories.

31. On September 12, 2002, the parties entered into a Stipulation of facts.

32. The Commission held hearings regarding the complaint against Plaintiffs on September 23, 24, October 22, and November 24, 2002.

33. On October 2, 2002, the Commission filed a Notice of Hearing to be Continued for the reconvening of the hearing on October 22, 2002.

34. During the hearing before the Commission, Plaintiffs were represented by counsel, called witnesses, including an expert witness, and presented evidence.

35. Eighty-seven (87) exhibits were received into evidence during the proceedings.

36. On or about December 23, 2002, closing arguments were submitted by brief.

37. The Commission members, via telephone conference call, examined and decided the case and determined proper penalties for its final decision sometime in late December 2002.

38. On December 31, 2002, the Commission issued Findings of Fact, Conclusions of Law and Final Order regarding Plaintiffs.

39. Following the hearing, the Commission determined that Plaintiffs were guilty of numerous violations of the rules and regulations, and sanctioned them to a $2,000 fine and a ban from any area under the jurisdiction of the Commission until January 1, 2006. Further it was determined that Plaintiffs would be ineligible for a license during that time period.

40. On January 28, 2003, the Racing Commission adopted a Directive regarding Treatment of Horses by Veterinarians Ineligible for Licensing.

41. Plaintiffs appealed the decision to the Lancaster County District Court under the Administrative Procedures Act, case numbers CI03-268 and CI03-270.

42. On January 23, 2003, the Plaintiffs filed an Application for Stay, in the District Court of Lancaster County, Nebraska, requesting that the judgment of the Racing Commission be stayed during the appeals process.

43. On February 18, 2003, the Lancaster County District Court denied the Plaintiffs' Application for Stay.

44. On May 20, 2003, the Lancaster County District Court issued a Judgment of Modification. The district court found that the Commission had jurisdiction over the matter, modified the Commission's findings of fact and conclusions of law as well as the sanctions imposed by the Commission. The district court specifically found that Plaintiffs should pay the $2000 fine and were ineligible for licensing by the Commission and denied access to all areas under the jurisdiction of the Commission until July 1, 2003.

45. On June 17, 2003, the Commission appealed the decision of the Lancaster County District Court.

46. On April 5, 2002, Van Horn submitted an application for a license.

47. On April 5, 2002, Oelschlager again sent a letter to Van Horn stating that his application would be held for further investigation and referred to the Commission for final action. Van Horn was invited to appear at the next meeting of the Commission scheduled for May 10, 2002, and to be represented by counsel.

9

48. On May 10, 2002, Van Horn applied for a temporary license under 294 NAC § 10.005.01. The Commission denied Van Horn's application for a temporary license.

49. Van Horn attended the Commission meeting on May 10, 2002. At that meeting, the Commission moved to continue the application "until a disposition has been rendered regarding the pending administrative alleged rule violations as it relates to Dr. Van Horn ..."

50. On July 2, 2003, Van Horn filed an application for a license with the Commission.

51. On July 3, 2003, Oelschlager sent a letter to Van Horn stating that he was referring the application to the Commission for final action, pursuant to Rule 10.005.

52. On July 17, 2003, Oelschlager responded to correspondence from Van Horn's attorney, explaining the reasons for holding Van Horn's 2003 application for further investigation.

53. Hearing was set on Van Horn's 2003 application for September 22, 2003.

54. On September 15, 2003, Van Horn, through his attorney, withdrew his license application.

55. On February 9, 2004, Plaintiff Van Horn filed a license application for 2004.

56. The Commission stayed any determination on Plaintiff's 2004 license application until resolution of the appellate process.

(Defendants' brief (filing 74 in 4:03CV3336) (filing 35 in 4:03CV3378), pp. 3-11) (document references and captioning omitted).

Although the foregoing facts are not in dispute, they do not establish that the defendants are entitled to judgment as a matter of law. These facts establish a firm timeline for the plaintiffs' actions, but they barely touch upon the determinative issues of whether the plaintiffs' rights to due process and equal protection were violated or whether the defendants are immune from suit despite the alleged constitutional violations.[3]

The dictates of NECivR 56.1 are not mere matters of form. See Cordray, 356 F. Supp. 2d, at 1015 n. 6. Rather, they are vital to a prompt resolution of summary judgment motions given the court's heavy caseload.[4] See Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank, 354 F.3d 721, 725 (8th Cir. 2003) (district courts are not obliged to scour the record and may adopt local rules designed to streamline the resolution of summary judgment motions). Because the defendants have not provided the court with a meaningful statement of facts that are "pertinent to the outcome of the issues identified in the motion for summary judgment," NECivR 56.1(a)(2) (defining "material" facts), their motion will be denied.

IT IS ORDERED that the defendants' motion for summary judgment (filing 73 in 4:03CV3336) (filing 34 in 4:03cv3378) is denied.

July 1, 2005.                                BY THE COURT:
                                             s/ *Richard G. Kopf*
                                             United States District Judge

---

[3] Qualified immunity shields government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McVay ex rel. Estate of McVay v. Sisters of Mercy Health System, 399 F.3d 904, 907 (8th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

[4] At the end of May, for example, I had 244 civil cases and 210 criminal cases pending before me.