IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STACY LANE VANHORN, | ) | 4:03CV3336 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NEBRASKA STATE RACING | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DOUGLAS L. BRUNK, | ) | 4:03CV3378 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NEBRASKA STATE RACING | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

The plaintiffs in these consolidated cases, Dr. Stacy Lane VanHorn and Dr. Douglas L. Brunk, are licensed veterinarians in the State of Nebraska who claim that they were denied due process and equal protection when they were disciplined by the Nebraska State Racing Commission and not permitted to treat racehorses. They seek declaratory and injunctive relief under 42 U.S.C. § 1983 against the Commission's executive director, Dennis Oelschlager, and its three members, Dennis P. Lee, Janell Beveridge, and Bob Volk, all of whom are sued in their official capacities only.[1] The

---

[1] The Commission has been ordered dismissed from the action on Eleventh Amendment immunity grounds. All individual capacity claims against the executive

defendants, claiming that the plaintiffs' actions are moot, have moved for summary judgment. (Filing 133 in Case No. 4:03CV3336; Filing 93 in Case No. 4:03CV3378.) The motions will be granted with respect to the equal protection claims, but will be denied with respect to the due process claims.

## *I. DISCUSSION*

VanHorn alleges in three "causes of action" that (1) he was denied due process when (a) he was disciplined by the Commission in 2002 and (b) he was not issued a license by the Commission to treat racehorses in 2002, (2) he was denied equal protection because a directive was issued by the Commission that precluded the plaintiffs from treating racehorses even off-premises (*i.e.*, away from the racetracks), and (3) he was denied due process when he was not issued a license by the Commission in 2003 and 2004. (Amended Complaint (filing 52), filed on May 14, 2004.) Brunk alleges in two "causes of action" that (1) he was denied due process when he was disciplined by the Commission in 2002, and (2) he was denied equal protection because of the Commission's directive forbidding off-premises treatment. (Amended Complaint (filing 20), filed on March 10, 2004.)

The defendants claim that the plaintiffs' actions, which were commenced in 2003, were rendered moot on July 22, 2005, when VanHorn was granted a license by the Commission. Brunk did not reapply for a license, but the defendants claim that he was otherwise eligible for licensing on that same date.

---

director and members of the Commission have also been dismissed, on grounds of absolute, quasi-judicial immunity, and for other reasons. To date, however, no final judgment of dismissal has been entered pursuant to Federal Rule of Civil Procedure 54(b).

"Mootness goes to the very heart of Article III jurisdiction, and any party can raise it at any time." *In re Smith*, 921 F.2d 136, 138 (8th Cir. 1990).[2] As the moving parties, the defendants have a "heavy" burden of proving mootness. *See Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004). "A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

### *Fact Summary*

In previously filed motions for summary judgments, the defendants showed that VanHorn and Brunk were both licensed by the Commission during 2001, and before, to examine or treat horses registered for racing. In March 2001, investigators for the Commission found positive tests for Clonidine in horses that were tested at Fonner Park in Grand Island, Nebraska. Following an investigation, complaints were filed against VanHorn and Brunk and, on January 10, 2002, they were advised by Oelschlager that if they applied for annual licenses for 2002, their applications would not be approved by him, but instead would be referred to the Commission for action. On December 31, 2002, the Commission issued a decision finding that VanHorn and Brunk were guilty of numerous rules violations, and they were each fined $2,000 and banned from racetracks until January 1, 2006; it was further ordered that VanHorn

---

[2] Indeed, "[t]he mootness doctrine is of such importance that '[i]t is the duty of counsel to bring to the federal tribunal's attention, "*without delay*," facts that may raise a question of mootness.'" *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 n. 3 (8th Cir. 1998) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 23 (1997), in turn quoting *Board of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985) (emphasis in original)). While not material to the court's disposition of the pending motions, I note that it took nearly 29 months for the defendants to raise the mootness question.

3

and Brunk would be ineligible for licensing by the Commission during the next 3 years. On January 28, 2003, the Commission adopted a directive that barred horses from racing that were being treated by veterinarians who were ineligible for licensing by the Commission. VanHorn and Brunk appealed the Commission's December 31st decision to the District Court of Lancaster County, Nebraska, and on May 20, 2003, that court entered a judgment which modified the Commission's findings of fact and conclusions of law, and provided that the racetrack bans and licensing ineligibility would only last until July 1, 2003, for VanHorn, and until July 1, 2004, for Brunk. The Commission appealed from this judgment.[3]

---

[3] On appeal, the Nebraska Supreme Court summarized the outcomes of the proceedings before the Commission and the Lancaster County District Court:

> Following the hearing, the Commission entered orders finding that Brunk and Van Horn had violated various rules of the Commission and assessed discipline. The Commission determined that Brunk had violated 294 Neb. Admin. Code, ch. 14, § 14.005.06 (2001), by causing Clonidine to be administered to eight horses on race days on nine occasions and that he was responsible for the presence of Clonidine in those horses in violation of § 18.011.01. It further determined that Van Horn caused Clonidine to be administered to two horses on a race day and was responsible for the presence of the drug in those horses. The Commission also determined that Van Horn had violated Commission rules by administering "Dex" and estrogen to horses on race days without permission and that Brunk had violated a rule requiring persons licensed by the Commission to cooperate in its investigation of alleged rule violations. In addition, the Commission found that each veterinarian had violated the Commission's rules regarding drug handling, packaging, and reporting. It determined that each veterinarian would be ineligible for licensing by the Commission, be denied access to all areas under its jurisdiction until January 1, 2006, and be assessed fines in the amount of $2,000.
>
> Brunk and Van Horn appealed to the district court pursuant to the Administrative Procedure Act. The court rejected their contention that

4

The defendants also showed in connection with their previous motions that VanHorn had unsuccessfully applied for licenses in 2002, 2003, and 2004: An application for an annual license was filed on April 5, 2002, was referred to the Commission, and was held in abeyance pending disposition of the complaint against VanHorn; an application for a temporary license was also filed on May 10, 2002, but was immediately denied. An application for an annual license was filed on July 2, 2003, was referred to the Commission for investigation, and was subsequently withdrawn by VanHorn on September 15, 2003, one week before a scheduled hearing. Finally, an application for an annual license was filed on February 9, 2004,

---

>  the Commission lacked jurisdiction to assess discipline after their licenses had expired at the end of 2001. Based upon a de novo review, the district court affirmed the findings of the Commission that Brunk failed to properly handle, package, and report medications given to horses and that he failed to file reports in a timely fashion. However, it determined that there was insufficient evidence to support the Commission's determination that Brunk had failed to cooperate with the Commission during its investigation. The court also determined that there was insufficient evidence to establish that Brunk caused Clonidine to be administered to any horses on race days or that he was responsible for such administration. With respect to Van Horn, the district court affirmed the Commission's finding that he had violated rules regarding drug handling, packaging, and reporting, but found the evidence insufficient to establish other charges, including those pertaining to unlawful administration of Clonidine and two other drugs. The district court also found the evidence insufficient to support the Commission's findings that Van Horn had administered Dex and estrogen in violation of Commission rules. On the basis of these findings, the court did not modify the fines assessed by the Commission but did modify the penalties assessed by shortening Brunk's period of disqualification from licensure to July 1, 2004, and Van Horn's to July 1, 2003.

*Brunk v. Nebraska State Racing Comm'n*, 700 N.W.2d 594, 599 (Neb. 2005).

but the Commission withheld action pending the outcome of its appeal to the Nebraska Supreme Court.

Evidence presented by the defendants in support of their current motions for summary judgment shows that VanHorn was granted licenses in 2005, 2006, and 2007: On July 22, 2005, following the issuance of an opinion by the Nebraska Supreme Court,[4] Oelschlager granted VanHorn a temporary license; he was not granted an unconditional license because he failed to disclose in his application a complaint for DUI and failure to appear in Hall County, Nebraska. VanHorn was granted a probationary license on February 6, 2006, because the DUI charge had ripened into a conviction; VanHorn signed a probationary license agreement, which provided for consequences for any further alcohol offenses and required him to submit to testing for alcohol by the Commission. In 2007, Oelschlager granted VanHorn another temporary license and referred his application to the Commission for a decision; VanHorn was later issued an unconditional license to practice in 2007. The Commission did not receive a license application from Brunk during 2005, 2006, or 2007, but Oelschlager believes that Brunk also would have been licensed on and after July 22, 2005 had he applied. The defendants also represent that VanHorn and Brunk are likely to receive licenses for 2008, and subsequent years, if they apply.

VanHorn and Brunk admit that they have been eligible for licensing since July 22, 2005, and that VanHorn has, in fact, been licensed since that date. VanHorn

---

[4] Although not stated by the defendants, the Nebraska Supreme Court affirmed the district court's judgment as to VanHorn in all respects, and affirmed the judgment as to Brunk except that the district court was found to have erred by ruling that the evidence was insufficient to support the Commission's determination that Brunk violated its rule requiring a licensee to cooperate with an investigation; because of this error, the Nebraska Supreme Court modified the judgment to extend the end-date for Brunk's racetrack ban and licensing ineligibility by 6 months, until January 1, 2005. *See Brunk*, 700 N.W.2d at 608 (Neb. 2005). The Nebraska Supreme Court's opinion was issued on July 22, 2005.

states in an affidavit, however, that "[t]he State of Minnesota in 2006 and the State of Indiana in 2007 have refused to issue me a racing license ostensibly based on my history with the Nebraska State Racing Commission." (Filing 142-2, ¶ 8.)

### *Equal Protection Claims*

Regarding the plaintiffs' claims that they were denied equal protection because of the Commission's January 28, 2003 directive, which disqualified racehorses that were treated by veterinarians who were ineligible for licensing by the Commission, the defendants have met their burden of proof by showing that VanHorn and Brunk have been eligible for licensing by the Commission since July 22, 2005. These claims, which now seek only declaratory and injunctive relief, are obviously moot, and thus will be dismissed.[5]

### *Due Process Claims*

Regarding the plaintiffs' due process claims, however, I conclude that the defendants' evidence fails to establish that "events have completely and irrevocably eradicated the effects of the alleged violation[s]." *See Viacom*, 375 F.3d at 745. That is, the defendants have failed to establish that the disciplinary action taken against VanHorn and Brunk in 2002, allegedly in violation of their due process rights, is without any collateral consequences, such as continuing injury to the plaintiffs' professional reputations.

---

[5] The "capable of repetition, yet evading review" exception to the mootness doctrine applies when two conditions are met: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *In re Operation of Missouri River System Litigation*, 421 F.3d 618, 631 (8th Cir. 2005). The plaintiffs do not argue that either condition is satisfied, nor do they argue that any other exception applies to their equal protection claims.

While the defendants take issue with the use of the word "ostensibly" in VanHorn's affidavit, regarding his inability to obtain licensing in Minnesota and Indiana, the Commission's own rules and regulations provide that "[w]hen the denial of a license has been ordered by the State Racing Commission, the Secretary of the Commission shall report the particulars to the applicant and shall further report the matter to the Association of Racing Commissioners International, Inc. giving detailed reasons why the denial was made." Title 294, Neb. Admin. Code, ch. 10, § 10.011. The Commission's rules and regulations also presume that racing commissions in other states will reciprocate when a license is revoked or denied, as Title 294, Neb. Admin. Code, ch. 10, § 10.014 provides: "The Commission may deny or revoke a license to any person who shall have been refused a license by any other State Racing Commission or racing authority; provided, however, that the State Racing Commission or racing authority of each other state extends to the State Racing Commission of Nebraska reciprocal courtesy to maintain the disciplinary control."

In *Papish v. Board of Curators of University of Mo.*, 464 F.2d 136 (8th Cir. 1972), *rev'd on other grounds*, 410 U.S. 667 (1973), after a graduate student was dismissed from a state university for violating its rules of conduct, she brought an action for declaratory and injunctive relief, claiming that her dismissal was invalid under the First and Fourteenth Amendments. Although evidence established that the plaintiff was not academically eligible for readmission, the Eighth Circuit held that the case was not moot, stating: "Because of the stigma which arose from . . . publicity [surrounding the dismissal] and attached to her reputation, we believe that there is at least a colorable basis for finding that Miss Papish retains a significant stake in the outcome of this litigation." *Id.* at 142. Also analogous to the present case is *Esteban v. Central Missouri State College*, 415 F.2d 1077 (8th Cir. 1969), in which college students who were suspended for two semesters brought an action for declaratory and injunctive relief, claiming First, Fifth, and Fourteenth Amendment violations. The Eighth Circuit "readily conclude[d] that the passage of the two semesters [did] not render the case moot." *Id.* at 1079 n. 1 (citing *Carafas v. La Vallee*, 391 U.S. 234,

237-240 (1968), and *Sibron v. New York*, 392 U.S. 40, 50-58 (1968)). Similarly, in *Jones v. Snead*, 431 F.2d 1115 (8th Cir. 1970), college students who were temporarily suspended and later reinstated were permitted to maintain an action for declaratory and injunctive relief for alleged violations of their civil rights. Citing *Esteban*, the Court of Appeals stated: "Since collateral effects may flow from the penalty, the expiration of the semester suspensions does not moot this controversy." *Id.* at 1116.

The Eighth Circuit does not appear to have applied the collateral consequences exception to a case involving professional licensing, but other circuits have done so, particularly in cases involving attorneys. *See, e.g., In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003) (attorney's suspension was not moot because continuing stigma associated with the suspension constituted possible collateral consequences); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 228 (5th Cir.1998) (finding that the appeal of an attorney who was disbarred and then reinstated was not moot because even temporary disbarment is harmful to a lawyer's reputation, and "the mere possibility of adverse collateral consequences is sufficient to preclude a finding of mootness") (citation and internal quotation omitted); *In re Hancock*, 192 F.3d 1083, 1084 (7th Cir.1999) (citing *Dailey* for the proposition that a suspended attorney's appeal was not mooted by his payment of the imposed sanction and subsequent reinstatement); *Kirkland v. National Mortgage Network, Inc.,* 884 F.2d 1367, 1370 (11th Cir.1989) (holding that attorney's appeal of the revocation of his pro hac vice status was not moot following dismissal of the underlying case because "the 'brand of disqualification' on grounds of dishonesty and bad faith could well hang over his name and career for years to come"); *Miller v. Washington State Bar Ass'n*, 679 F.2d 1313, 1316, 1318 (9th Cir.1982) (an attorney could sue a state bar association to expunge a letter of admonition from his file since he would be required to explain the admonition if he applied to the bar in other states or for judicial appointments).

VanHorn and Brunk were prohibited from practicing veterinary medicine at racetracks for three years after being charged by the Commission with doping horses

and other rule violations. Because the plaintiffs' professional reputations presumably were harmed by these charges and by the 3-year licensing ban, I conclude that their actions for declaratory and injunctive relief concerning the defendants' alleged due process violations are not mooted simply by the fact that the plaintiffs have regained their eligibility for licensing by the Commission.

Accordingly,

IT IS ORDERED that the defendants' motions for summary judgment (filing 133 in Case No. 4:03CV3336 and filing 93 in Case No. 4:03CV3378) are granted in part and denied in part, as follows:

1. The motions are granted with respect to the plaintiffs' equal protection claims ("second cause of action" in filing 52 in Case No. 4:03CV3336, ¶¶ 51-55, and in filing 20 in Case No. 4:03CV3378, ¶¶ 48-52), and such claims are dismissed with prejudice, as moot.

2. In all other respects, the motions are denied.

February 28, 2008.                    BY THE COURT:

                                      s/ *Richard G. Kopf*
                                      United States District Judge